DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Heather Harless, appeals from the orders of the Meigs County Court of Common Pleas, Juvenile Division, denying her request that the Court determine a child support arrearage, in effect retroactively modifying the child support obligation of Appellee, David Lambert. Appellant contends that the trial court abused its discretion in the application of the law regarding "retroactive application of adjustments to non-delinquent child support." Because we find that the trial court did not abuse *Page 2 
its discretion in denying Appellant's request for modification, we affirm the decision of the trial court.
 I. Facts {¶ 2} Appellee, David Lambert, was determined to be the father of Jacob Michael Lambert in 1992. A corresponding child support order was established at that time and set at $58.37 per week. Appellee's child support was subsequently increased in March of 1998 to $62.13 per week; however, by entry dated January 20, 1999, Appellee's child support obligation was reduced to $51.00 per month, effective November 7, 1998. The January 1999 order provided that the rate of $51.00 per month was to be in effect while Appellee was "unemployed and not receiving unemployment compensation." The order further provided that "[w]hen Defendant [Appellee herein] becomes re-employed, the previously set `employed' rate shall apply."
 {¶ 3} Subsequently, Appellee began to receive worker's compensation benefits, the first check received being in May of 1999, which covered the period of December 16, 1998 through March 2006. Appellee continued to receive worker's compensation benefits through the time in which the present action was filed, totaling over $157,000. Appellee apparently informed the Child Support Enforcement Agency ("CSEA") of his receipt of *Page 3 
benefits as CSEA began withholding his monthly $51.00 child support obligation from his worker's compensation benefits. Nevertheless, none of the parties, Appellee, Appellant, or CSEA requested that the support obligation be reviewed in light of Appellee's new source of income. Rather, CSEA continued to withhold the previously set amount of $51.00 per month from Appellee's worker's compensation benefits until Appellant initiated the current action.
 {¶ 4} Appellant then requested an administrative review of Appellee's child support in April of 2005and an administrative hearing was held where both Appellant and CSEA agreed that Appellee's child support obligation should be increased to $296.64 per month. On August 5, 2005, Appellee filed a request for court hearing on the matter, stating that he felt the calculation of the support amount was in error because his "income has not change (sic) for [the] last six years."
 {¶ 5} As a result of Appellee's request, a hearing for "consideration of modification of a support obligation" was held and by entry dated October 21, 2005, the Juvenile Court adopted the modification recommendation and modified Appellee's support obligation to $296.64 per month, noting that "both parties consented to the proposed amount within the statutory time limits." The order further provided that "the parties shall notify the *Page 4 
Meigs County Child Support Enforcement Agency in WRITING upon any change in their employment status, address, or upon obtaining ownership of any asset with a value of $500.00 or more." The newly calculated child support order was made retroactive to August 1, 2005, in accordance with R.C. 3119.84, which provides that a modification order may be made retroactive to the date the motion for modification was filed.
 {¶ 6} Appellant does not dispute the trial court's retroactive modification of Appellee's current support obligation to the date the motion for modification was filed; however, she does dispute some of the language of both the administrative review and the court's order related to the amount of the prior support order that was in effect. Specifically, Appellant contends that the $51.00 support obligation was temporary and should have been increased to the previously established rate of $62.13 per week once Appellee began receiving income in the form of worker's compensation benefits.
 {¶ 7} Appellant also contends that Appellee received other "earned income"[2] separate and apart from his worker's compensation benefits. Thus, Appellant filed a motion asking the trial court to determine the arrearage between the period of November 1998 and August 1, 2005, as she contends *Page 5 
that Appellee should have been paying the higher "employed" rate of child support. It is from the trial court's denial of her motion that Appellant now brings her appeal, assigning the following error for our review:
 {¶ 8} "I. THE TRIAL COURT ABUSED ITS' (SIC) DISCRETION IN THE APPLICATION OF THE LAW REGARDING RETROACTIVE APPLICATION OF ADJUSTMENTS TO NON-DELINQUENT CHILD SUPPORT."
 {¶ 9} Appellant contends that the issue presented for review to this Court involves the question of whether a trial court can retroactively increase a non-delinquent child support obligation to the date that employment or an income source is obtained. Although Appellant attempts to distinguish her request for relief from a typical "modification" of child support by referring to her request in the original motion filed in the Juvenile Court as a "determination of child support arrearage" and on appeal as a "retroactive application of adjustment" of child support, or a "retroactive increase" of child support[3], we are not persuaded. In our view, Appellant's request is only a request for a retroactive modification of child support.
 {¶ 10} As Appellant correctly sets forth in her brief, the standard of review for cases involving a modification of child support is an abuse of *Page 6 
discretion. Hamilton v. Hamilton (1995), 107 Ohio App.3d 132,667 N.E.2d 1256. Thus, the determination of whether to make a modification retroactive cannot be reversed unless the trial court abuses its discretion. Id., citing Murphy v. Murphy (1984), 13 Ohio App.3d 388,389, 469 N.E. 2d 564. An abuse of discretion connotes more than an error of law or judgment; it implies that the judgment of a court is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 11} It is well established in Ohio that child support cannot be modified retroactively. McPherson v. McPherson (1950), 153 Ohio St. 82,90 N.E.2d 675. This rule, originally codified at R.C. 3113.21(M)(3)-(4), was repealed and renumbered effective March 22, 2001, as R.C. 3119.83
and 3119.84. R.C. 3119.83[4] provides that "[e]xcept as provided in section 3119.84 of the Revised Code, a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment." Further, RC. 3119.84[5] provides that "[a] court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court *Page 7 
support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered."
 {¶ 12} Thus, the general rule is that child support modifications may only be made retroactive to the date that the obligor was given notice that a petition to modify has been filed. Tobens v. Brill (1993),89 Ohio App.3d 298, 624 N.E.2d 265; citing Murphy v. Murphy, supra;State ex rel. Draiss v. Draiss (1990), 70 Ohio App.3d 418,591 N.E.2d 354; Osborne v. Osborne (1992), 81 Ohio App.3d 666, 611 N.E.2d 1003. However, as this Court noted in Osborne, "courts have recognized extreme circumstances in which equitable considerations permit retroactive modification prior to the date of the motion. Osborne at 674.
 {¶ 13} In Osborne, this Court, in finding that the appellant had committed a fraud upon the court by misrepresenting his gross income at the time the dissolution decree was entered, retroactively modified the appellant's child support obligation to the date of the dissolution decree. Id. In so holding, we reasoned that "if we were to hold that the trial court could retroactively order this support figure only to the date of appellee's motion, appellant would still retain the benefits of the fraud he perpetrated upon appellee and the court between the dates of the dissolution decree and appellee's motion." Thus, we limited our holding to the circumstances of the *Page 8 
case, reasoning moreover that the trial court "was utilizing its inherent powers to remedy a fraud rather than merely asserting its modification jurisdiction." Id. Accordingly, although this Court has made exceptions to the general rule prohibiting retroactive modifications of child support prior to the date of the filing of the motion for modification, we have required a showing of extreme circumstances such as fraud in order to do so.
 {¶ 14} Here, Appellant expressly states in her brief to this Court that she "is not alleging that the Appellee committed fraud in an attempt to lower his child support obligation." She further states that she "is not requesting that the support be retroactive based upon fraud, but rather based on the fact that the Appellant began receiving income shortly after the January 20, 1999 order was entered by the Court." Because Appellant specifically disclaims any fraud or wrongdoing on the part of Appellee, we cannot conclude that a modification under these circumstances would be consistent with our reasoning inOsborne, supra, which we specifically limited to extreme circumstances such as fraud.
 {¶ 15} As previously stated, Appellant requests that Appellee's child support obligation be made retroactive based on the fact that Appellant began receiving income shortly after the January 20, 1999 order was entered. However, as Appellant notes in her brief, Appellee apparently notified *Page 9 
CSEA of his new source of income and CSEA issued withholding orders to BWC for the $51.00 per month child support obligation. In fact, Appellant candidly admits in her brief that despite this notification, "MCSEA failed to follow the January 20, 1999 order of the Court that stated that once the Appellee was re-employed, his child support rate would increase back to the "employed rate."[6] Under these facts, we cannot conclude that extreme circumstances exist that would warrant a retroactive modification of child support prior to the date of the filing of the motion for modification.
 {¶ 16} Appellant further creatively argues that a distinction exists between retroactive modifications of delinquent versus non-deliquent child support obligations. In support of this argument, Appellant relies on Hakhamaneshi v. Shabani, Columbiana App. No. 00CO36, 2001-Ohio-3292. In Hakhamaneshi, the Seventh District Court of Appeals, relying in part on this Court's reasoning in Osborne, supra, held as follows:
 "In cases where the obligor is unemployed and collecting unemployment at the time child support was calculated and where he later obtains substantial employment, the court may be permitted to enforce the notice that requires *Page 10 
the obligor to report changes in employment status by making a child support increase retroactive to the date that he was reemployed."[7]
 {¶ 17} In Hakhamaneshi, the appellant was unemployed at the time of his divorce and stipulated that a reduced child support obligation would remain in effect until there was a material change in the circumstances of the parties. Hakhamaneshi, supra. Subsequently, the appellant gained employment resulting in an increase in his income from $17,000 per year to $60,000 per year; however, the appellant failed to report his re-employment to CSEA, which, in turn, prohibited CSEA and the court from conducting a review. Id. The appellee in that case argued that the appellant's failure to report his employment status constituted evidence of fraud or deceit justifying a retroactive modification to the date the appellant gained re-employment. Id.
 {¶ 18} Ultimately, the Hakhamaneshi court retroactively increased the appellant's non-delinquent child support obligation to the date that he obtained employment, reasoning that
 "the stipulation and decree combined with appellant's statutory obligation to reveal his change in employment status from unemployed to employed and the court's power to enforce this obligation justify our pronouncement that a statutorily implicit exception to the ban on retroactive increases in child support is warranted in the case at bar." *Page 11 
 {¶ 19} We believe that Hakhamaneshi is factually distinguishable from the case presently before us. In Hakhamaneshi, 1) there was allegation of fraud of the part of the appellant; and 2) the appellant failed to report his re-employment to CSEA as he stipulated he would do. Here, there is no allegation that Appellee attempted to defraud anyone, and in fact, there is evidence that Appellee informed CSEA once he began to receive worker's compensation benefits. Thus, although the reasoningof Hakhamaneshi seems to imply that a distinction exists between retroactive modifications of delinquent versus non-delinquent child support obligations, the court still seemed to hinge its decision on the existence of some sort of wrongdoing (failing to report re-employment as stipulated) on the part of the appellant.
 {¶ 20} The same is true in other cases that have retroactively modified non-delinquent child support beyond the date the motion for modification was filed. See, Leffel v. Leffel (Oct. 24, 1997), Clark App. No. 97CA20, 1997 WL 666102 (where the court recognized a distinction between delinquent and non-delinquent child support modifications and retroactively modified the child support obligation at issue based upon its finding that the appellant "perpetrated a fraud upon the court"); See, also, Sprankle v. Sprankle (Mar. 25, 1998), Medina App. No. 2678-M, 1998 WL 159019 (where the court noted "the legislature recognized that trial courts have *Page 12 
greater power to retroactively modify current child support obligations" and affirmed the decision of the trial court based upon a finding of "special circumstances").
 {¶ 21} Thus, in light of the fact that Appellant disclaims any act constituting fraud on the part of Appellee, and because Appellee did, in fact, notify CSEA when he began to receive worker's compensation benefits, we can find no "special circumstance" herein to justify a retroactive modification. Thus, the trial court did not abuse its discretion in denying Appellant's motion below. Accordingly, we affirm the decision of the trial court.
JUDGMENT AFFIRMED. *Page 13 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Kline, J.: Concur in Judgment and Opinion.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commences from thedate of filing with the clerk.
[2] Although Appellant claims Appellee had "earned income" in addition to his worker's compensation benefits, no details regarding the amount of income or duration of employment are contained in the record before us. Rather, Appellant's arguments mainly focus on the receipt of worker's compensation benefits.
[3] In her appellate brief, Appellant explains that she "is not asking for a modification of the support order, but is requesting that the Court enforce the language in the January 20, 1999 order that states `when Defendant becomes re-employed, the previously set employed rate shall apply'." Appellant further states in her brief that "[t]his is not a case wherein the Appellant is asking for a modification of the child support order, but instead is requesting that the support order that the court entered be enforced."
[4] Formerly R.C. 3113.21(M)(3), now amended and renumbered as R.C. 3119.83.
[5] Formerly R.C. 3113.21(M)(4), now amended and renumbered at R.C. 3119.84.
[6] Appellant argues that Appellee's child support obligation should have automatically been increased when he started receiving worker's compensation benefits, reasoning that "[r]eceiving income in the form of worker's compensation benefits has the same result as being re-employed, namely income." While the result may be the same, we are not convinced that the order was sufficiently clear to require Appellee to report a change in his income by including the language stating that "when the Defendant becomes re-employed, the previously set rate shall apply." Appellant's argument presupposes that "receiving income" equates to "being re-employed; " which we are not convinced is an entirely accurate assessment.
[7] In so holding, the court noted that "this is a change in employment status case which has nothing to do with reporting changes in income, as the statute requires disclosure of employment status or income source but not changes in amount of income. See In re Kelley
(Dec. 15, 2000), Champaign App. No. 2000CA14, unreported, 2 [2000 WL 1838760]." *Page 1